FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 0 8 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

KENNETH JOHNSON;
JACQUELYN JOHNSON,

        Plaintiffs

        v.

GEORGIA DEPARTMENT
OF PUBLIC HEALTH,

        Defendant.

**1 : 2 4 -CV- 5 1 4 0**

CIVIL ACTION NO:
1:23-cv-04218-LMM

COMPLAINT

JURY TRIAL DEMAND

## NATURE OF THE ACTION

Section One of the Fourteenth Amendment to the U.S. Constitution reads, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Section Five gives the U.S. Congress the explicit power to enforce through legislation the provisions of the article, thus the creation of the Enforcement Act of 1871 also known as the Ku Klux Klan Act and more significantly the Civil Rights Act of 1871 codified as 42 U.S.C §1983 - Deprivation of Rights, 42 U.S.C §1985 - Conspiracy to Interfere

1

with Rights, and 42 U.S.C §1986 - Neglect to Protect Rights, implicitly abrogating the states' eleventh amendment immunity. A negligent failure to protect by the State, which includes agencies acting as the arm of the State that are in a position to protect victims from the provisions of the statute is actionable[1]. The statute creates a legal duty!

This is a case brought pursuant to the provisions of the Civil Rights Act of 1871, codified as 42 U.S.C §1983 and 42 U.S.C §1986 to correct unlawful deprivation of rights, neglect to protect rights, and disparate treatment based on systemic racial discrimination in the State of Georgia, during the time periods of September 7, 2023 through the present, November 8, 2024, which is from the first request by the Plaintiff's to the Georgia Department of Public Health (hereinafter *"DPH"*) to amend the erroneous and fraudulent cause of death on the death certificate of their minor son Kendrick Lamar Johnson (hereinafter *"KJ"*). The actions before this court are timely.

The Plaintiff's have been adversely affected and endured deprivation of rights and neglect to provide equal protection under the laws by the Defendant concerning the scientifically and physically impossible narrative that their minor child KJ died from a freak accident during school hours inside an unsupervised gymnasium at Lowndes County High School in Valdosta Georgia. The

---

[1] See Clark v. Clabaugh, 20 F.3d 1290, 1298 (3d Cir. 1994) (finding that negligence is sufficient to maintain § 1986 claim).

Defendant denied the Plaintiffs, 1) their right to a timely and accurate amended death certificate for their minor son KJ, a statutory mandate under the Georgia Code; 2) civil and Due Process rights under the United States and Georgia Constitutions.

On or about September 7, 2023, Plaintiff's submitted first request to the Defendantt to amend the death certificate of their minor son KJ pursuant to provisions under the O.C.G.A 31-10-23[2].

On or about October 6, 2023, Plaintiff's submitted a second request to the Defendant to amend the death certificate of their minor son KJ, pursuant to provisions under the O.C.G.A 31-10-23.

Pursuant to Rule 511-1-3-.26[3], the Plaintiffs requested that the death certificate for KJ be amended based on two medical examinations performed by Forensic Pathologist William Anderson. Dr. Anderson determined KJ died from non-accidental blunt force trauma and provided pictures of a collapsed and hemorrhaging carotid artery from his autopsy.

To date, the Defendant has not complied with State law to act either by amending the death certificate for KJ or rejecting the Plaintiff's request to amend

---

[2] See O.C.G.A 31-10-23 - Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital records.
[3] See Rule 511-1-3-.26. - Who May Apply to Amend a Vital Record, https://rules.sos.state.ga.us/GAC/511-1-3-.26(2)

thus providing the Plaintiff's the opportunity appeal such decision and request for a hearing[4], and therefore in violation of the Plaintiffs Constitutionally protected Fourteenth Amendment Rights.

Additionally, photographs of KJ's body taken at the crime scene of KJ's murder, contradict the "accidental" cause of death on the State certified death certificate providing the Defendant with additional cause to amend the death certificate.

Lastly, recently discovered documents from government files concerning KJ revealed unmistakable and irrefutable instances of evidence tampering after KJ's body was removed from the Lowndes County High School property.

None of the evidences have been presented to a Jury nor has there been a trial or customary Due Process rights pursuant to the United States Constitution.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

---

[4] See https://rules.sos.state.ga.us/GAC/511-1-3-.39 (1) - Persons seeking to obtain or amend a vital record may appeal the action or refusal to act of local custodians, registrars, or employees of the Office of Vital Records, by filing an appeal in writing with the State Registrar. The appeal must specifically identify the employee or official involved, the action or refusal to act, and must state the complainant's right or standing to complain of the action or inaction.

2.  This action is authorized and instituted pursuant to Civil Rights Act of 1871

42 U.S.C §1983 - Deprivation of Rights and 42 U.S.C §1986 - Neglect to Protect

Rights.

3.  The actions, deprivation of rights and neglect to protect rights commenced

within the jurisdiction of the United States District Court for the Northern District

of Georgia.

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.  Plaintiff's are the parents of Kendrick Johnson former student at Lowndes

County High School found dead inside a gym wrestling mat.  Plaintiff's address is

2800 Tydnall Drive, Valdosta, Georgia 31602.

6.  The Georgia Department of Public Health maintains public vital statistics

records for the State of Georgia. Defendant-DPH place of business in Georgia is

200 Piedmont Avenue, SE, Atlanta, GA 30334.

7.  Between the dates of September 7, 2023 through the present, November 8,

2024, the Defendant deprived and neglected to protect the Plaintiff's rights

pursuant to the provisions of the Fourteenth Amendment, the Civil Rights Act of

1871 codified as 42 U.S.C §1983 and 42 U.S.C §1986 in their pursuit of an

accurate Georgia state certified death certificate regarding the death and murder of

5

their minor child KJ who was found dead inside a gym wrestling mat on January 11, 2013.

8.    The causes of action herein arose during this time period.

## RELAVANT BACKGROUND AND FACTS RELATING TO THE DEPRIVATION OF RIGHTS, CONSPIRACY TO INTERFERE WITH RIGHTS, AND NEGLECT TO PROTECT RIGHTS

9. On or about March 9, 2021 Lowndes County Sheriff Ashley Paulk reopened the departments death investigation of KJ amid ongoing unrest by local residents who contend KJ's death was not accidental.

10. On or about January 25, 2022, Sheriff Paulk announced it had concluded the agencies investigation into the death of KJ and released a synopsis of its conclusions.

11. The 16-page synopsis by Sheriff Paulk rife with false information, logical fallacies, scientific impossibilities and evidence that directly contradicted the accidental cause of death on KJ's state certified death certificate.

12. On or about September 7, 2023, Plaintiff's submitted a first request to the Defendantt to amend the death certificate of their minor son KJ pursuant to provisions under the O.C.G.A 31-10-23[5].

---

[5] See O.C.G.A 31-10-23 - Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital records.

6

13. On or about October 6, 2023, Plaintiff's submitted a second request to the Defendant to amend the death certificate of their minor son KJ, pursuant to provisions under the O.C.G.A 31-10-23.

14. Pursuant to Rule 511-1-3-.26[6], the Plaintiff's requested that the death certificate for KJ be amended based on two medical examinations performed by Forensic Pathologist William Anderson. Dr. Anderson determined KJ died from non-accidental blunt force trauma and provided pictures of a collapsed and hemorrhaging carotid artery from his autopsy.

15. To date, the Defendant has not complied with State law to act either by amending the death certificate for KJ or rejecting the Plaintiff's request to amend thus providing the Plaintiff's the opportunity appeal such decision and request for a hearing[7], and therefore in violation of the Plaintiffs Constitutionally protected Fourteenth Amendment Rights.

## FIRST CAUSE OF ACTION

## VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF RIGHTS

---

[6] See Rule 511-1-3-.26. - Who May Apply to Amend a Vital Record, https://rules.sos.state.ga.us/GAC/511-1-3-.26(2)

[7] See https://rules.sos.state.ga.us/GAC/511-1-3-.39 (1) - Persons seeking to obtain or amend a vital record may appeal the action or refusal to act of local custodians, registrars, or employees of the Office of Vital Records, by filing an appeal in writing with the State Registrar. The appeal must specifically identify the employee or official involved, the action or refusal to act, and must state the complainant's right or standing to complain of the action or inaction.

7

16. Pursuant to O.C.G.A 31-10-23 Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital records.

17. On or about September 7, 2023, Plaintiff's submitted a first request to the Defendantt to amend the death certificate of their minor son KJ pursuant to provisions under the O.C.G.A 31-10-23[8].

18. On or about October 6, 2023, the Plaintiffs submitted a request to Defendant-DPH (Exhibit 1) to correct the cause of death on their son's death certificate. (Exhibit 3 - Declaration of Kenneth Johnson "Johnson Decl.," ¶ 2)

19. The Plaintiffs completed the appropriate forms (Exhibit 1), supplied vital records with the report from the autopsy performed by independent medical examiner Forensic Pathologist Dr. William Anderson (Exhibit 2), as well as multiple pictures of their son's injuries. See Exhibit 4, (see also Johnson Decl. ¶3)

20. The Plaintiffs learned that in spite of the findings from the autopsies performed by independent medical examiner Dr. Anderson that Kendrick's cause of death was non-accidental blunt force trauma, autopsy pictures of KJ's carotid artery hemorrhaging   and the evidence showing numerous injuries all over

---

[8] See O.C.G.A 31-10-23 - Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital records.

8

Kendrick's body directly contradicting the State Medical Examiners autopsy report, the Defendant would not correct the death certificate. (Johnson Decl. ¶8)

21. The Plaintiffs learned that Defendant-DPH had been unable to locate Dr. Kraft to confront her with the evidence of their sons injuries that Dr. Kraft deliberately left out of her autopsy report. (Johnson Decl. ¶9)

22. On February 6, 2024, Mr.Johnson contacted vital records to inquire about the status of the Johnson's request and whether Dr. Kraft had been located to review the evidence and correct the death certificate. (Johnson Decl. ¶10)

23. The Plaintiffs learned that Dr. Kraft had not been located and the death certificate had not been corrected. (Johnson Decl. ¶11)

24. For nearly twelve years, Defendant-DPH has maintained an erroneous death certificate for the Plaintiffs minor son KJ.

25. The State of Georgia has deprived the Plaintiffs the right and the protections under the law to provide them with an accurate death certificate for their minor son KJ.

## SECOND CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1986 NEGLECT TO PROTECT RIGHTS

26. Under Georgia statute O.C.G.A 31-10-23 the Defendant is required to maintain accurate vital records.

9

27. The State Office of Vital Records is responsible for creating, maintaining, and providing access to vital records data.

28. Vital statistics data are important because they represent the universe of events, not a sample.  Reporting vital events is mandatory.

29. The Defendant is also mandated to comply with the Health Insurance Portability and Accountability Act of 1996 to protect health information.

30. Thus the Defendant has a statutory duty to act and protect the rights of the Plaintiffs rights to accurate information concerning the death of their minor son and also have a statutory duty to act and protect the integrity of vital statistics.

31. The Defendant has not fulfilled its duty to act therefore has failed to protect the rights of the Plaintiff under the Fourteenth Amendment (42 U.S.C §1986) and further failed to protect the integrity of vital statistics information.

32. Lastly, in addition to the evidence of KJ's body being mutilated prior to burial, by happenstance the Plaintiffs recently discovered their son's body had been tampered with in a feeble attempt by authorities to conceal a multitude of injuries on KJ's body. (Exhibit 5)

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare the Defendants to be in violation of Plaintiff's civil rights by maintaining an erroneous death certificate of their minor son.

10

B. Declare the Defendant must amend the death certificate of Kendrick Johnson to reflect the cause of death supported by the material facts and forensic evidence.

C. Declare that the Defendant, who is in control of and responsible for maintaining accurate vital records for the state of Georgia, have a duty to protect the integrity of the information in its' control.

D. Find that the Plaintiff has suffered adversely being subjected to racial bigotry and harassment as results of the Defendants egregious, willful and wanton acts.

E. Grant judgment to Plaintiff in the amount of $5,000,000.00 in compensatory damages, with pre- and post-judgment interest of ten percent.

F. Grant judgment to Plaintiff in the amount of $5,000,000.00 in punitive damages, with pre- and post-judgment interest of ten percent.

G. Grant such further relief as the court deems necessary and proper in the public interest.

H. Grant Plaintiff any costs of this action, including reasonable attorney fees, expert witness fees, and litigation costs.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all questions of fact raised in the Complaint.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

11

my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,

Dated: November 8, 2024

/s/ Kenneth Johnson
Kenneth Johnson

/s/ Jacquelyn Johnson
Jacquelyn Johnson

2800 Tyndall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

12

# Exhibit 1

Kenneth and Jackie Johnson
2800 Tydnall Drive
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

October 6, 2023

State Office of Vital Records
1680 Phoenix Blvd., Suite 100
Atlanta, Georgia 30349

RE:  Request Death Certificate Cause of Death Correction for Kendrick Johnson

Dear Commissioner Toomey:

Pursuant to O.C.GA 31-10-23 Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital records.

We are submitting a completed Affidavit For Amendment Form 3977 and the results of Dr. William R. Anderson who determined our son Kendrick Johnson died from non-accidental blunt force trauma. See Exhibit 1

According to Medical Examiner Maryanne Gaffney-Kraft, she found no wounds on Kendrick except for a scrape on the back of his right wrist and three small injuries on his right pinky.

We are also submitting evidence of wounds Dr. Kraft deliberately did not include in her examination of Kendrick in order to maintain the integrity and accuracy of vital records.

Exhibit 2 shows a laceration and blood on the left ring finger.

Exhibit 3 shows a laceration on the left ear.

Exhibit 4 shows a laceration on the top lip.

Exhibit 5 shows extensive bruising and swelling on the face and upper torso.

Exhibit 6 shows a blood stream from wounds consistent with the distinct markings and dimensions of a stun gun.

Exhibit 7 is especially disturbing because it shows what purports to be a cervical vertebrae autopsy procedure. Bruising on the back very visible in spite of Dr. Kraft's best efforts to cut and pull back the damaged skin on Kendrick's neck. The most gruesome aspect of Exhibit 7 are the large, deep, wide portions of Kendrick's back cut out and removed.

Investigators working on our behalf were unable to find any medical professionals in the United States who could identify a medical explanation or even technique used to butcher and mutilate Kendrick's body as shown in Exhibit 7. Considering Dr. Kraft claims she found no significant wounds on Kendrick then there was no reason to cut his neck and back at all.

To this end, we request the cause of death for Kendrick Johnson to be amended to correctly identify the cause of death as non-accidental blunt force trauma and that this request and exhibits be made part of the permanent vital records.

In advance, thank you for your time and prompt attention to this very important matter.

Warmest Regards,

Kenneth and Jacquelyn Johnson
*/s/ Kenneth Johnson*
*/s/ Jacquelyn Johnson*

cc: Commissioner Kathleen E. Toomey, M.D., M.P.H.



**AFFIDAVIT FOR AMENDMENT · FORM 3977 (REVISED 09/2018)**

## PLEASE PRINT OR TYPE ALL INFORMATION LEGIBLY AND CORRECTLY BELOW. COMPLETE THE FRONT AND BACK OF THIS FORM.

### Section 1: REQUIRED INFORMATION

REQUESTING CORRECTION TO:

| ❑Birth | ❑Stillbirth/Fetal Death | ■Death |
|---|---|---|

| STATE FILE NUMBER<br>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 | | DATE OF BIRTH & HOUR OF BIRTH (MONTH, DAY, & YEAR)<br>10/10/1995 | |
|---|---|---|---|
| FIRST NAME OF CHILD AT BIRTH<br>Kendrick | MIDDLE NAME OF CHILD AT BIRTH<br>Lamar | LAST NAME OF CHILD AT BIRTH<br>Johnson | GENERATION (JR., II, III, ETC.) |
| MOTHER/PARENT 1 FIRST NAME AT BIRTH<br>Jacquelyn | MOTHER/PARENT 1 MIDDLE NAME AT BIRTH<br>Lavern | | MOTHER/PARENT S LAST NAME AT BIRTH<br>Martin |
| FATHER/PARENT 2 FIRST NAME AT BIRTH<br>Kenneth | FATHER/PARENT 2 MIDDLE NAME AT BIRTH<br>Lamar | | FATHER/PARENT 2 LAST NAME AT BIRTH<br>Johnson |
| FATHER'S PLACE OF BIRTH (CITY, COUNTY, STATE)<br>Valdosta, Lowndes, Georgia | | FATHER'S DATE OF BIRTH (MONTH, DAY, & YEAR)<br>02/20/1969 | |

| ITEM OMITTED OR IN ERROR | BIRTH CERTIFICATE SHOWS | SHOULD BE |
|---|---|---|
| Cause of death | Accidental positional asphyxia | Non-Accidental blunt force trauma |
| | | |
| | | |
| | | |

I HEREBY DECLARE UNDER OATH THAT THE STATEMENTS ABOVE ARE TRUE TO THE BEST OF MY KNOWLEDGE. (SIGNATURE OF REGISTRANT OR PARENT)
/s/ Kenneth Johnson

CURRENT ADDRESS OF REGISTRANT (STREET NAME & NUMBER, CITY, STATE, & ZIP CODE)
2800 Tydnall Drive, Valdosta, Georgia 31602

EMAIL ADDRESS
mikekjjohnson48@yahoo.com

### DO NOT WRITE BELOW THIS LINE.

| NAME & KIND OF DOCUMENTARY EVIDENCE (INCLUDE BY WHOM AND DATE ISSUED) | ORIGINAL DOCUMENT DATE (MONTH, DAY, & YEAR) |
|---|---|
| | |
| | |
| | |
| | |

ADDITIONAL INFORMATION OR EXPLANATION

| As an official representative of the State Registrar, I certify that I have examined the evidence and information presented on this form. | SIGNATURE OF CERTIFIER | DATE SIGNED (MONTH, DAY, & YEAR) |
|---|---|---|
| SIGNATURE OF THE STATE REGISTRAR | | ORIGINAL BIRTH CERTIFICATE FILE DATE (MONTH, DAY, & YEAR) |

### Section 2: NOTARY PUBLIC

| ACKNOWLEDGED TO BE TRUE BEFORE ME ON (NOTARY'S SIGNATURE & DATE): | MY TERM EXPIRES ON (DATE): |
|---|---|
| ID TYPE PRESENTED BY REGISTRANT | ID NUMBER PRESENTED BY REGISTRANT |
| ID TYPE PRESENTED BY BIRTH MOTHER/PARENT 1 | ID NUMBER PRESENTED BY MOTHER/PARENT 1 |
| ID TYPE PRESENTED BY BIRTH FATHER/PARENT 2 | ID NUMBER PRESENTED BY FATHER/PARENT 2 |

PLEASE PLACE THE NOTARY SEAL BELOW.

Page 1 of 2 (Please see instructions on the back)





**AFFIDAVIT FOR AMENDMENT · FORM 3977 (REVISED 09/2018)**

NOTE: The fee for amendments to Vital Records is $10.00. This fee does not include certified copies of the record and is non-refundable. Certified copies of birth and death certificates are $25.00 and $5.00 for each additional copy purchased at the same time.

| Example: | Amendment | $10.00 |
|---|---|---|
| | Certified Copy | $25.00 |
| | +1 Additional Copies | $5.00 |
| | | $40.00 |

If this request is being mailed, please forward this completed form with a U.S. Money Order or certified check for the correct amount made payable to the State Office of Vital Records. **A valid copy of your Photo ID must accompany this request**. Please do not send cash by mail.

## INSTRUCTIONS FOR AMENDING A BIRTH CERTIFICATE

The Amended Birth Certificate form must be completed by the registrant, the parent, or the legal representative. ALL INFORMATION MUST BE TYPED OR PRINTED IN BLACK OR BLUE-BLACK PEN. The Amended Birth Certificate is a permanent record and will replace the original record on file.

**Step 1.** Complete the information as it should appear on the Amended Birth Certificate in the top portion. Enter the child's name, sex, hour of birth if applicable, date of birth, city, or town or location of birth, county of birth, mother's maiden name, mother's date of birth or age, mother's state of birth, father's full name, father's date of birth or age, and father's state of birth if applicable.

**Step 2.** Complete the items to be amended or corrected. Enter the item omitted or in error; then enter the information as it appears on the original birth certificate and enter the birth information as it should be.

**Step 3.** The Amended Birth Certificate must be signed by the registrant or parent in the Affidavit section. The notary shall sign his or her name, enter the date the information was "sworn and subscribed to", the date his or her notary commission expires and impress the notary seal in the space marked 'IMPRESS SEAL HERE".

**NOTE:** APPLICANTS OR THEIR REPRESENTATIVES DO NOT ENTER ANY INFORMATION BELOW THE SOLID LINE MARKED "APPLICANT – DO NOT WRITE BELOW THIS LINE."

**Step 4.** The applicant (or his or her representative) must submit the required evidence which shows the information listed in the sworn portion of the form.

All records submitted must verify the facts claimed and must also show the name and address of the company, agency, or institution where the record was filed; the date the record was made and by whom and must be submitted in the following form: (1) A statement on letterhead stationery of the official and signed by the official who has custody of the record OR (2) A copy of a record which is certified to be a true copy by the official having custody of the original record.

All documents will be returned to the applicant upon review. Altered records or records which show incorrect information will not be accepted. UNCERTIFIED COPIES OF DOCUMENTS ARE NOT ACCEPTABLE. To determine the age your record should be, please refer to the Abbreviated Records Requirement Chart. FORM 3977 SHOULD NOT BE USED TO ESTABLISH PATERNITY.

## ABBREVIATED RECORDS REQUIREMENT CHART

This chart is acceptable for amending a birth certificate only.

| Age of Child | Required Age of Record |
|---|---|
| 8 years or older | Record at least five years old |
| 4 years – 7 years | Record filed not more than three years after the date of birth |
| Over 1 year – 3 years | Record at least one year old |

In all cases, the evidence must have been created at least (1) year prior to the date of application.

PLEASE ADDRESS ALL CORRESPONDENCE TO THE ADDRESS BELOW.
STATE OFFICE OF VITAL RECORDS | 1680 PHOENIX BLVD. SUITE 100, ATLANTA, GA 30349 | PHONE 404.679.4702



### To Amend a Name

☐ To amend a given name, a record which shows the full correct name as it should appear on the certificate and correct age OR date of birth is required since the correction to the child's name was not performed within the first year of birth. The record must at least five years old.

☐ To amend the name on the birth certificate requires a court order indicating the changes from (original name) and change to (new name). In addition, please provide a statement on letterhead from the physician indicating the intersex/transgender diagnosis. The statement must bear the original signature of the physician and state his/her title, which will also be retained on file with the above court order.

☐ To change the surname requires a Court Order.

☐ To amend the spelling of the surname requires one document filed within the first seven years of the registrant's life that also shows the parents' surname.

### To Amend a Birth

☐ To amend the date of birth only requires a five year old document indicating the registrant's full name and full date of birth.

☐ To amend the name or date of birth of a parent born within the U.S., you must provide a certified copy of the parent's birth certificate. A photocopy will suffice if the parent was born in the State of Georgia.

☐ To amend the name or date of birth of a parent born in another country, you must provide a certified translated copy of the birth certificate, as well as, the original birth certificate.

☐ The date of birth may be amended no more than one year by supporting evidence created prior to the registrant's seventh birthday. To amend the year of birth by more than one year requires an order from a superior court or probate court.

### To Amend the Sex

☐ To amend the sex on the birth certificate requires a five year old record. The document must show the name, sex, and age or date of birth of the registrant.

### To Amend the Address

☐ To amend the address of the mother/parent 1 at the time of the child's birth, please furnish the State Office of Vital Records with a letter from the U.S. Postmaster, on their letterhead, stating the mother/parent 1's name and address at the time of the child's birth. To be acceptable, the document must show the name, agency location, and the date the document was filed or recorded. The document must also be an original.

# Exhibit 2

# FORENSIC DIMENSIONS
### MEDICAL DIAGNOSTIC SERVICES--ORLANDO
### 1630 BRIDGEWATER DRIVE
### HEATHROW, FLORIDA 32746
### (407) 333-3512

*William R. Anderson MD*                                              *M. A. Raven, RN*

**PVT-13**
**Autopsy Examination**

## REPORT OF FORENSIC DIAGNOSTIC CONSULTATION

PATIENT:     JOHNSON, KENDRICK

AGE: 17        SEX: M

DATE/DEATH:     01/11/13 FOUND          TIME/EXAM:   11:30
DATE/EXAM :     06/15/13                REQUEST/BY:   JACQUELYN JOHNSON
DATE/REPORT:    08/15/13 (ADDENDUM 09/21/18)

## ANATOMIC PATHOLOGIC FINDINGS:

1. Blunt Force Trauma, Right Neck
   a. acute hemorrhage soft tissues of upper neck
   b. acute peri-osteal hemorrhage, posterior body, right mandible
   c. areas of acute hemorrhage involving carotid artery bifurcation, and carotid body

2. Blunt Force Trauma, Right Thorax*
   a. acute hemorrhage, soft tissues and intercostal musculature

3. Review of initial autopsy: ME01984 4000101-13
   a. pulmonary findings c/w rapid onset death
   b. findings not consistent with positional asphyxia

## CAUSE OF DEATH:

BLUNT FORCE TRAUMA, RIGHT NECK, INVOLVING RIGHT MANDIBLE, AND SOFT TISSUES, INCLUDING THE AREA OF THE CAROTID BODY, CONSISTENT WITH INFLICTED INJURY

*BLUNT FORCE TRAUMA, RIGHT ANTERO-LATERAL THORAX

NOTE: UNEXPLAINED, APPARENT NON-ACCIDENTAL, BLUNT FORCE TRAUMA: FURTHER INVESTIGATION IS INDICATED TO DETERMINE THE ETIOLOGY OF THE INJURIES.

WILLIAM R. ANDERSON MD, PATHOLOGIST

## REPORT OF FORENSIC DIAGNOSTIC CONSULTATION

### GROSS ANATOMICAL EXAMINATION:

The autopsy is performed at the request of Jacquelyn & Kenneth Johnson in the Robert Bryant Funeral Home, prosector: Dr. William R. Anderson, assisted by: Ms. Lynetta Oxendine. (*Second autopsy at Brown Funeral Home.)

### IDENTIFICATION:

The identification of the body is made by funeral home identification tags.

### CLOTHING & PERSONAL EFFECTS:

The body is received in a sliver metal casket and dressed in red shirt, under shirt, black slacks, sport shoes, wrist watch, and plastic undergarment.

### SCARS, TATTOOS, & SPECIAL FEATURES:

Examination of the victim shows no signifcant areas of scarring or the presence of tattoos. There are no needle tracks or other cutaneous needle puncture sites other than those associated with medical therapy.

### GENERAL STATEMENT:

The body is that of a normally developed, moderately well-nourished Black male appearing the stated age of 17 years, measuring 70" in length, and weighing approximately 160 lbs. The body has been previously embalmed and a prior autopsy has been performed. Evidence of moderate decomposition is noted, most prominent in the facial area. Areas of skin slippage are identified on the chest, abdomen and extremities, bilaterally, c/w postmortem artifact. There is good preservation of the soft tissues of the musculo-skeletal system.

### EXTERNAL EXAMINATION:

The hair is black; the eyes are autolyzed The conjunctival membranes exhibit no pallor, petechiae, or icterus. There is no periorbital trauma or edema.

The dentition is natural. There is no trauma to the lips or frenulae. (See Description of Injuries.)

The neck is normally formed, with no deformities. (See Description of Injuries.)

The chest is bilaterally symmetrical with no increase in the AP diameter, or width of the intercostal spaces. The breasts are normal male, with no masses or trauma.

The abdomen shows a moderate amount of subcutaneous fat, with no distention. Genitalia are normal adult male, with no trauma.

The extremities are normally formed, with no evidence of muscle wasting, or edema. The skin shows no diffuse or discrete lesions, and no areas of abnormal pigmentation.

### SPECIAL PROCEDURES:

The following special procedures are performed: Toxicology: None; Forensic Analysis: None; Hematology: None; Microbiology: None; Histology: Representative tissue sections are submitted.

### DESCRIPTION OF INJURIES:

Examination of the head and neck shows an area of contusion injury involving the right mandibular area, with moderate discoloration of the skin. Examination of the previously undissected area and sectioning of the skin reveals evidence of full-thickness cutaneous hemorrhage, extending into the subcutaneous fat,

Further dissection into the deep soft tissue reveals hemorrhage into the musculature with extension to the peri-osteal region of the inferior aspect of the posterior body of the right mandible. Focally, an area of intra-osseous hemorrhage is identified in an area of moderately prominent peri-osteal and soft tissue hemorrhage.

Examination of the right upper-neck reveals hemorrhage in the deep soft tissue and musculature adjacent to the bifurcation of the right common carotid artery and carotid body.

Examination of the soft tissues of the left neck area reveals no grossly-evident areas of hemorrhage.

*Examination of the area of discoloration involving the right anterior thorax reveals areas of possible hemorrhage into the soft tissues and intercostal musculature.

*Examination of the skin and soft tissues of the anterior left lower mandible area reveals areas of possible hemorrhage into the musculature.

### INTERNAL EXAMINATION:

VISCERA REMOVED AT INITIAL AUTOPSY IS NOT PRESENT WITH THE BODY

### MICROSCOPIC EXAMINATION:
#### *TISSUE SAMPLES COLLECTED 06/30/2018

#### SOFT TISSUES: NECK
Microscopic examination of the soft tissues reveals areas of extravasated RBC's in specimens "A" and "B" taken from the right neck, as well as sections of mandible and soft tissues of the right neck. IHC stain for Hemoglobin B-chain, decorates the areas of extravasation in tissues showing moderate autolytic changes secondary to prolonged post-mortem interval. Specimen "C" taken from the soft tissues of the left neck show a few foci of extravasated RBC's, with no areas of significant aggregation of blood..

#### SOFT TISSUES: RIGHT THORAX *
Microscopic examination of the soft tissues reveals areas of extravasated RBC's in 2 of 3 specimens obtained from the right thoracic area. (Muscle adjacent to these areas reveals no hemorrhage.)s

## MICROSCOPIC EXAMINATION (CONT'D):

SOFT TISSUES: JAW *
Microscopic examination of the soft tissues reveals no confirmed areas of extravasated RBC's in 2 of 2 specimens obtained from the right mandibular area.

ME01984 4000101-13 (GBI )
Microscopic examination of the tissue slides received from the initial autopsy reveals moderately autolyzed tissues:

HEART:
  autolysis; no interstitial or replacement type fibrosis; no inflammation; no intraparenchymal hemorrhage; no necrosis; no vasculitis; no degenerative changes

LUNGS:
  autolysis; no inflammation in alveolar spaces or interstitial tissue; no bronchial inflammation; no atypia; no significant edema

PANCREAS:
  severe autolysis; no masses; no inflammation; no hemorrhage

LIVER:
  autolysis; no fatty metamorphosis; no acute inflammation; no necrosis or hepatocellular degeneration

SPLEEN & LYMPH NODES:
  autolysis; no reactive germinal follicles;

ADRENAL GLANDS:
  autolysis ; no masses; no inflammation; no hemorrhage

KIDNEYS:
  autolysis; no glomerular, tubular or vascular lesions; no inflammation

BRAIN:
  autolysis; no hemorrhage; no hypoxic or degenerative changes; no inflammation;





















# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

KENNETH JOHNSON, et al,

Plaintiffs

v.

GEORGIA BUREAU OF
INVESTIGATIONS, et al,
Defendants.

CIVIL ACTION NO:
1:23-cv-04218-LMM

JURY TRIAL DEMAND

Affidavit of Kenneth Johnson

I, Kenneth Johnson, under penalty of perjury, state the following:

1. I, Kenneth Johnson, am over the age of 18 and I am legally competent to give this Affidavit which is freely and voluntary given. The facts contained herein are based on my own personal knowledge. In addition, I understand this affidavit may be used for any purpose to be permitted by law.

2. On or about October 6, 2023, my wife Jackie and I submitted a request to State Office of Vital Records to correct the cause of death on our son's death certificate.

3. We completed the appropriate forms, supplied vital records with the report from the autopsy performed by Forensic Pathologist Dr. William Anderson, as well as multiple pictures of our sons injuries.

4.  Several weeks passed without any response from vital records so I called them to inquire about the status of our request.

5.  I was informed our request had not been received by the vital records department in spite of having confirmation from the United States Postal Service the mailing had been successfully delivered.

6.  A few weeks went by when I received a phone call from the State Office of Vital Records regarding our request.

7.  I learned the State Office of Vital Records had in fact received our request.

8.  I learned that in spite of the findings from the autopsies performed by Forensic Pathologist Dr. Anderson and the evidence showing numerous injuries all over our sons body and directly contradicting the State Medical Examiners autopsy report, only the GBI medical examiner could correct the death certificate.

9.  I learned that the State Office of Vital Records had been unable to locate Dr. Kraft to confront her with the evidence of our sons injuries that Dr. Kraft deliberately left out of her autopsy report.

10. On February 6, 2024, I contacted vital records to inquire about the status of our request and whether Dr. Kraft had been located to review the evidence and correct the death certificate.

2

11. I learned that Dr. Kraft had not been located and the death certificate had
    not been corrected.

I have read the foregoing Affidavit and hereby declare under penalty of perjury

that it is true and correct and it was executed the 13th day of February 2023.

*/s/ Kenneth Johnson*_____
Kenneth Johnson

3

# Exhibit 4











# Exhibit 5

Follow-up Criminal Complaint 20240205 - Kendrick Johnson - Evidence tampering, false statements, corruption, RICO

From: jburrs1715@aol.com (jburrs1715@aol.com)

To:    criminal.division@usdoj.gov; michael.horowitz@usdoj.gov; danny.foster@usdoj.gov; cigie.information@cigie.gov; corey.amundson@usdoj.gov

Cc:    mikekjjohnson48@yahoo.com; billmorgan_esq@yahoo.com; steve@truecrimeweb.com; ayanna.pressley@mail.house.gov; jasmine.crockett@mail.house.gov

Bcc:   jennifer.clarke@usdoj.gov; maria@committeefilms.com; antonio.richardson@committeefilms.com; pfrankwilliams@icloud.com; dianell.hudson@gmail.com; bumpyjonas.dc@gmail.com

Date:  Monday, October 14, 2024 at 03:57 PM EDT

To all concerned parties:

I am contacting you on behalf of Kenneth Johnson, the father of Kendrick Johnson, the teen found murdered and rolled up inside a gym tumbling mat in Valdosta Georgia in 2013.

The purpose of this correspondence is to follow up on the multiple criminal complaints filed with the DOJ and U.S. Attorney in Atlanta (https://drive.google.com/file/d/1F8vDgwElC2K7wVGw32vDIQqHjG62SveF/view?usp=drive_link) concerning government corruption and to provide the DOJ, OIG, and PIN with additional information of evidence tampering (obstruction), false material statements by a federal judge in a final order in the Johnson's civil lawsuit where they were not afforded the opportunity of discovery or a trial, accessory after the fact, perjury, and conspiracy.

The Johnson's recently received several photographs of Kendrick taken from one of the government's case files related to his death that conclusively show authorities tampered with his body in what only could be described as efforts to deceive and conceal KJ's cause of death.

The photograph of Kendrick's body lying on the floor in the LCHS gymnasium reveals injuries on the right side of his body that are consistent with a two-pronged stun gun. A zoomed in close-up picture of those injuries has been provided for your review.

Next there is a photograph from KJ's case file that is a close-up Kendrick's body in a similar position it was in on the gym floor on what appears to be white covered table or stretcher. The top of his boxers are showing, his shirt is lifted up revealing fresh blood droplets in the exact same location on the right side of body as the injuries shown on his body while it was on the gym floor. A close-up picture of the blood droplets is included and shows the blood is still wet and glistening. Since blood droplets of this size dry within 45 mins at regular room temperature and KJ's body wasn't found for 19-20 hours after death, a reasonable person would conclude the fresh blood droplets were intentionally put on his body to give the appearance the blood dripped on the body by mistake and to conceal the truth that a two-prong stun gun caused the injuries.

Additionally, the size and shape of the blood droplets intentionally put on Kendrick's body are different than the size and shape of the blood from the injuries caused by the stun gun. Furthermore, there is an additional spec of blood underneath the blood that is higher on KJ's side that isn't in the picture of KJ's body while it was on the gym floor further evidence of tampering.

Another example of evidence tampering is two photographs of Kendrick's body from the autopsy performed by the GBI medical examiner. One photograph shows Kendrick's upper body with abundant of peeling dead skin. In the second of his upper body, the peeling dead skin seen in the first photo mysteriously isn't there.

The layers of government corruption involved in this case is unprecedented as much as it is undeniable. There is more than enough probable cause and evidence to arrest, charge, convict, and imprison at least 7 current or former employees in local, state, and federal government of federal crimes:

1. Chris Prine
2. Stryde Jones
3. James Thornton
4. Maryanne Kraft
5. Ashley Paulk
6. Leigh Martin May
7. John Doe FBI employee (deliberately withheld pictures of Kendrick Johnson from the consultation with the Defense Health Agency -
https://drive.google.com/file/d/12vdmsMoeJuHSYM5ruBGFfdcU4yYVWuU9/view?usp=drive_link)

Johnson's Misconduct Petition: https://drive.google.com/file/d/19UtH2bd-KwbVYc9pvcv_rWLldGDPnDxW/view?usp=drive_link

Johnson's Petition to Investigate and Impeach Judge Leigh Martin
May: https://drive.google.com/file/d/1YbDyWm4-ddiUWgiwb0bBFhixYv4_ZRld/view?usp=drive_link

Mr. Johnson's contact information is as follows:

Kenneth Johnson
229.560.5555
mikekjjohnson48@yahoo.com

Thank you in advance for your time and attention to this correspondence.

*/s/ Jonathan R. Burrs*
Jonathan R. Burrs, Johnson Family Spokesperson



















