IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 1 6 2026

KEVIN P. WEIMER, Clerk
By _____ Deputy Clerk

KENNETH JOHNSON, et al,

        Plaintiffs

        v.

GEORGIA DEPARTMENT OF
PUBLIC HEALTH

        Defendants.

Civil Action No:
1:24-cv-5140-SEG

PLAINTIFFS' MOTION
TO LIFE STAY OF
DISCOVERY

## **PLAINTIFFS' MOTION TO LIFT STAY OF DISCOVERY**

Plaintiffs Kenneth and Jacquelyn Johnson (hereinafter "Plaintiffs" or "the Johnsons") respectfully move the Court lift the Stay of Discovery in this matter before the Court.

Defendant-Department of Public Health (hereinafter "DPH") frivolously argued that as a state agency it has Eleventh Amendment immunity protections even when the state has violated the law and violated the constitutionally protected rights of citizens of the state of Georgia. Defendant-DPH moved this Court to stay discovery while the presiding judge considered it's motion to dismiss.

This Court granted Defendant-DPH's motion purporting to consider

arguments by the Plaintiff and Defendant.

**Arguments**

Section One of the Fourteenth Amendment to the U.S. Constitution reads, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section Five of the Fourteenth Amendment gives the U.S. Congress the explicit power to enforce through legislation the provisions of the article, thus the creation of the Enforcement Act of 1871 also known as the Ku Klux Klan Act and more significantly the Civil Rights Act of 1871 codified as 42 U.S.C §1983 - Deprivation of Rights, 42 U.S.C §1985 - Conspiracy to Interfere with Rights, and 42 U.S.C §1986 - Neglect to Protect Rights, implicitly abrogating the states' eleventh amendment immunity.

O.C.G.A 31-10-23 states, "Amendment of certificates or reports (a) Unless otherwise specified by law, a certificate or report registered under this chapter may be amended in accordance with this chapter and regulations adopted by the department to protect the integrity and accuracy of vital

records."

Ga. Code Ann., § 31-10-16(c) states, "determining death authorized in subsection (a) of this Code section shall be cumulative to and shall not prohibit the use of other medically recognized criteria for determining death."

Ga. Code Ann., § 31-10-6(b), is not vague, "Local registrars shall collect and receive vital records, review them for accuracy and completeness, and keep and submit other reports as may be required by the department."

The matter before this Court was filed under provisions of the Fourteenth Amendment where Defendant-DPH has maintained inaccurate vital statistics records regarding the cause of death for the Plaintiff's minor son Kendrick Lamar Johnson and has unapologetically refused to amend the cause of death on the death certificate in accordance with state law thereby depriving the Plaintiff's of rights and protections of the laws of Georgia, violating their constitutionally protected rights and negating Defendant-DPH's pretextual claims of immunity under the subordinate Eleventh Amendment.

This Court accepts as true that exhibits have control when conflicts arise and "a district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the

3

complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Crenshaw v. Liste*r, 556 F.3d 1283, 1292 (11th Cir. 2009).

The exhibits attached to the Plaintiff's initial Complaint (Dkt. 1) as well as numerous exhibits submitted to this Court since the initial filings leave no question that the vital statistics records certified by the state of Georgia and maintained by Defendant-DPH are inconsistent with state statutory mandates of accuracy.

**Evidence That Negates Vital Statistics Certified Record**

For example, physical observations of Exhibit A (Anterior Chest/Shoulder Hemorrhage) shows deep intramuscular sucutaneous hemmorhage of anterior thorax and shoulder girdle which in medical terms requires active circulation; indicates ante-mortem compression; not produced by lividity or decomposition.

The legal significance is that it contradicts accidental entrapment.

Exhibit B (Posterior Thoracic Hemorrhage) shows hemorrhage extension onto posterior shoulder/back surfaces demonstrating bidirectional

or surface-against-surface compression; common in restraint/crush asphyxia therefore inconsistent with passive hypoventilation in mat and supports compressive mechanism.

Exhibit C (Conjunctival Congestion - Red Eyes) shows marked ocular congestion without traumatic rupture indicating venous outflow obstruction and hypoxia. This is classic asphyxial indicator supporting active asphyxial physiology and requires circulation, undermining official accidental scenario.

Exhibit D (Cerebral Edema (Right-Sided)) shows unilateral brain swelling; flattened gyri; reduced sulcaldefinition which is consistent with hypoxic-ischemic injury via venous obstruction not stereotypical of head trauma without scalp/skull injury; supportive of ante-mortem asphyxia circulation and contradicts passive death in vertical mat.

Exhibit E (Lower Extremities Negative) findings; No abrasions, contusions, lividity, petechiae, or congestion. Demonstrates absence of survival physiology inside mat; no vertical dependent changes. This supports post-mortem placement and contradicts prolonged vertical entrapment scenario.

**Crime Scene Staging**

Exhibits F and G occurred postmortem injuries that occurred during the staging of the crime scene, contradicting official claims by Georgia authorities of a passive death from a prolonged vertical entrapment scenario.

When comparing Exhibits H and I, it is visibly clear the shoe and positioning of the hair over the shoe are different.

Date and timestamp data for Exhibit H indicates the photo was taken on January 11, 2013 at 1700 hours.  When law enforcement had an opportunity to collaborate and decide the shoe Kendrick was allegedly reaching for from their invented narrative wasn't visible enough, they re-positioned the shoe and his dreadlocks by spreading them apart making the shoe more visible. Once comfortable the staging was how they wanted, at 1711 on January 11, 2013 they took Exhibit I.

It is clearly noticeable that the shoe authorities purport Kendrick was reaching for has no blood or purge that occurred during the first stage of decomposition according to Dr. Kraft, is absent from the top of the shoe and not saturated with "blood" as officially reported by the Valdosta-Lowndes

Crime Laboratory Report by James Thornton on or about January 25, 2013.

To summarize the evidence before this Court, Kendrick Johnson was viciously assaulted, kicked, punched, shocked with a stun gun, held down with restricted air capacity, and at least two different shoe treadmarks on his body indicative of being stomped on the floor after being assaulted with a stun gun (Exhibit J) until he was dead.  His body was then placed into a gym tumbling mat feet first.

The Plaintiff's have expert witnesses available to provide sworn testimony to the same.

Therefore, the Plaintiffs' move this Court to Lift the Stay of Discovery for the proceedings.

Respectfully submitted,

Dated:    January 13, 2026              */s/ Kenneth Johnson*_____
                                        Kenneth Johnson

                                        */s/ Jacquelyn Johnson*_____
                                        Jacquelyn Johnson

                                        2800 Tyndall Drive,
                                        Valdosta, Georgia 31602
                                        229.560.5555
                                        mikekjjohnson48@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

KENNETH JOHNSON, et al,

    Plaintiffs

    v.

GEORGIA DEPARTMENT OF
PUBLIC HEALTH

    Defendants.

Civil Action No:
1:24-cv-5140-SEG

PLAINTIFFS' MOTION
TO LIFE STAY OF
DISCOVERY

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing ***PLAINTIFFS' MOTION LIFT***

***STAY OF DISCOVERY*** with the Clerk of the Court via United States Postal

Service mail. I also certify that I mailed by United States Postal Service the

foregoing document to the following participants:

1

Respectfully submitted,

Dated:    January 13, 2026

*/s/ Kenneth Johnson*_____
Kenneth Johnson

*/s/ Jacquelyn Johnson*_____
Jacquelyn Johnson
2800 Tyndall Drive,
Valdosta, Georgia 31602
229.560.5555
mikekjjohnson48@yahoo.com

Roger Chalmers
State of Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300

# Exhibit A



# Exhibit B






# Exhibit C



# Exhibit D




# Exhibit E




# Exhibit F



# Exhibit G





# Exhibit H





**Friday, January 11, 2013 · 5:00 PM**    **Edit**

IMG_0594.JPG
/Internal storage/Download

### Canon EOS DIGITAL REBEL XS

1.96 MB | 2592x3888 | 10MP
ISO 400 | 28mm | 0.0ev | F4.0 | 1/60 s | Flash used

# Add tag



# Exhibit I





**Friday, January 11, 2013 · 5:11 PM**          **Edit**

IMG_0600.JPG
/Internal storage/Download

**Canon EOS DIGITAL REBEL XS**

1.88 MB | 3888x2592 | 10MP
ISO 400 | 39mm | 0.0ev | F5.0 | 1/60 s | Flash used

# Add tag

# Exhibit J



